UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRIAN CAVANAUGH,<br>*Plaintiff*, | ) CASE NO. 3:20-cv-981 (KAD)<br>)<br>) |
| v. | )<br>) |
| JOSH GEBALLE and MICHELLE GILMAN,[1]<br>*Defendants*. | ) MARCH 11, 2024<br>) |

### MEMORANDUM OF DECISION
### RE: MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (ECF NO. 78) AND PLAINTIFF'S MOTION TO JOIN (ECF NO. 84)

Kari A. Dooley, United States District Judge:

Plaintiff Brian Cavanaugh commenced this § 1983 action against Defendant Josh Geballe in his individual capacity and his official capacity as the Commissioner of the Department of Administrative Services ("DAS") of the State of Connecticut. Plaintiff originally sought declaratory and injunctive relief for violations of his federal statutory rights under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* ("Medicaid"), the Affordable Care Act ("ACA"), and his Fourteenth Amendment Due Process rights. By way of a Second Amended Complaint, Plaintiff now sues current DAS Commissioner Michelle Gilman in her official capacity and Josh Geballe in his individual capacity pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, violations of 42 U.S.C. §§ 1396a & 1396p, the Due Process Clause of the Fourteenth Amendment, and the Takings Clause of the Fifth Amendment. His claims arise out of the Commissioner's past efforts to recoup medical expenses paid by the State on Plaintiff's behalf. Principally, Plaintiff seeks a permanent injunction precluding the Commissioner from pursuing $57,915 in said medical expenses and which were previously reflected in a lien placed by the Commissioner against

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Michelle Gilman is automatically substituted as Defendant for Plaintiff's official capacity claims because she was appointed Commissioner in February 2022.

Cavanaugh's interest in his grandmother's estate. He seeks a declaration that the medical debt is invalid. As discussed herein, the lien is no longer permitted under a recent change in state law and accordingly, has been removed by the Commissioner. Pending before the Court is the Commissioner's motion to dismiss on mootness grounds pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) failure to state a claim. For the following reasons, the motion to dismiss is GRANTED and the motion to join is MOOT. (ECF Nos. 78, 84)

**Facts and Procedural History**

Plaintiff Brian Cavanaugh enrolled in HUSKY D, a Medicaid health insurance program provided by the Affordable Care Act and offered by the State of Connecticut, on October 3, 2011. Second Amended Complaint ("SAC") at 16 ¶ 39. From October 3, 2011, through November 16, 2011, Plaintiff received substance abuse and mental health treatment totaling $57,915.00 from the State of Connecticut at an institute for mental disease ("IMD"). SAC at 15–16, 18 ¶¶ 38, 49.

Years later, a probate proceeding commenced in the Connecticut State Probate Court for the District of Saybrook to administer the will of Cavanaugh's deceased grandmother, DiBirma Burnham. SAC at 18 ¶ 47. On March 29, 2019, the DAS Commissioner filed a statutory lien against Plaintiff's share of the estate for repayment of the medical services he received in 2011. *Id.* Thereafter, Plaintiff sued then-DAS Commissioner, Josh Geballe, in his official capacity, requesting, among other relief, a declaratory judgment that the Commissioner did not have a lien on his inheritance or his grandmother's estate and a permanent injunction enjoining the Commissioner from asserting the lien or enforcing Conn. Gen. Stat. §§ 17b-93, 17b-94, 17b-224, 18-85b, 46b-129, and 46b-130 in a manner that violates federal law. Compl. at 5 ¶¶ 26–27.[2]

---

[2] The Court dismissed the Complaint for lack of subject matter jurisdiction pursuant to *Younger* abstention. *Cavanaugh v. Geballe*, No. 3:20-cv-981 (KAD), 2021 WL 781796 (D. Conn. Mar. 1, 2021). The Second Circuit vacated the decision and remanded for further proceedings, holding that *Younger* abstention did not apply. *Cavanaugh v. Geballe*, 28 F.4th 428 (2d Cir. 2022).

After remand from the Second Circuit and before Plaintiff filed a motion for leave to file an Amended Complaint, the state legislature amended Conn. Gen. Stat. § 17b-93, which now states:

> On and after July 1, 2022, the state shall not recover properly paid cash assistance, including by means of a lien filed on any real property, or a claim filed against property, a property interest or estate or claim of any kind, unless the state is required to recover such assistance under federal law or the provisions of this section. Any lien on real property or state claim against property, a property interest or estate or claim of any kind filed under this section by or on behalf of the state prior to July 1, 2022, shall be deemed released by the state if the recovery of such assistance is not required under federal law or the provisions of this section.

The lien on Plaintiff's inheritance falls into this latter category. The legislature also completely repealed Conn. Gen. Stat. § 17b-94, which had provided a mechanism for the State to impose a statutory lien on a beneficiary of aid for various state programs.[3] Accordingly, on July 13, 2022, the Commissioner withdrew the State's lien in the amount of $57,915.00 from the Probate Court because "the assistance that was received is no longer recoverable." Ex. D, ECF No. 69 at 47.

Recognizing that the lien is no longer in place, or even permitted under state law, Plaintiff now alleges in his Second Amended Complaint that DAS Commissioner, Michelle Gilman, in her official capacity, and Josh Geballe, in his individual capacity, violated 42 U.S.C. § 1983, 42 U.S.C. §§ 1396a & 1396p, the Due Process Clause of the Fourteenth Amendment, and the Takings Clause of the Fifth Amendment by "establishing a debt" totaling $57,915.00 on Plaintiff for medical assistance rendered to him in the fall of 2011 and seeks a declaratory judgment declaring such a debt a violation of his federal rights.

**Standard of Review**

---

[3] Conn. Gen. Stat. § 17b-94(b) specifically provided for liens to be placed against an inheritance for aid previously paid under the state supplement program, medical assistance program, aid to families with dependent children program, temporary family assistance program, or state-administered general assistance program.

Federal district courts are courts of limited jurisdiction under Article III, Section 2 of the United States Constitution. *See*, *e.g.*, *Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376 (1940). If subject matter jurisdiction is lacking, the action must be dismissed. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The Court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the Court "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*. "In resolving a motion to dismiss under Rule 12(b)(1), the [Court] must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences

4

in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Discussion**

Defendants have moved to dismiss the Second Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(5) (for lack of service on Geballe in his individual capacity),[4] 12(b)(1) (mootness & Eleventh Amendment sovereign immunity), and 12(b)(6) (failure to state a claim upon which relief can be granted). In partial response to the motion to dismiss, Plaintiff moved to join Geballe as a defendant in his individual capacity. This motion is moot however as Plaintiff already named Geballe as a defendant in his individual capacity in the Second Amended Complaint.

Plaintiff contends that this case is not moot because the debt should never have been established in the first place in violation of various federal statutes, to include Medicaid laws and the Affordable Care Act. Plaintiff seeks declaratory and injunctive relief to preclude the State of Connecticut from ever collecting on the debt and to render the debt invalid; Plaintiff also requests money damages and attorney's fees and costs. SAC at 29 ¶ 87. Plaintiff clarifies in his brief that his requests for a declaratory judgment and injunctive relief are against state actors (presumably, Commissioner Gilman); his request for just compensation is against the State of Connecticut;[5] and his request for money damages, attorney's fees, and other such equitable relief is against Geballe in his individual capacity. P. Mem. in Opp. at 17.

*Claims against Commissioner Gilman – 12(b)(1)*

---

[4] Plaintiff acknowledges that he never served Geballe in his individual capacity. Insofar as the Court dismisses the claims against this defendant under Rule 12(b)(6), the Court does not address whether or how untimely service should be permitted under Rule 4(m).

[55] The State of Connecticut is not a defendant in this action and therefore any purported claim against the State of Connecticut is not further discussed.

"Article III, Section 2 of the Constitution limits the jurisdiction of the federal courts to the resolution of 'cases' and 'controversies.'" *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quotation marks omitted). "This limitation is 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "A case becomes moot when it no longer satisfies the 'case-or-controversy' requirement of Article III[.] . . . In order to satisfy this requirement, the [plaintiff] must, at all stages of the litigation, have suffered, or be threatened with, an actual injury which is likely to be redressed by a favorable judicial decision." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 51 (2d Cir. 2004). "And if in the course of litigation, a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021).

In an analogous case, a District of New Jersey court held that a plaintiff's injunctive claims against a defendant who held subrogation and reimbursement liens on her settlement award were moot because the defendant withdrew the liens. *See West v. Health Net of the Northeast*, 217 F.R.D. 163, 175 (D.N.J. 2003). The court held that the voluntary cessation of challenge conduct exception to mootness did not apply because the defendant "irrevocably released any reimbursement and subrogation claims against plaintiff" because the liens were "void due to New Jersey laws." *Id.* (quotation marks omitted). Accordingly, the court dismissed the claims for injunctive relief as moot because the "withdrawal was unequivocal and complete" and plaintiff "was never required to pay any amounts because of the lien, and while she asserts that she bore 'incidental costs' associated with the lien, she has not presented any proof or explanation of these costs." *Id.* at 176. *See also Carey v. Inslee*, 364 F. Supp. 3d 1220, 1224 (W.D. Wash. 2019) (finding as moot plaintiff's claim for injunctive relief against "all future

collection of agency fees from nonunion members" because the union "has already changed its policy to stop collecting fees" and the Supreme Court's decision in *Janus* "declared the relevant conduct unconstitutional"). The Court sees no reason why a different outcome should prevail here. Because DAS withdrew its lien, and Connecticut law now prevents DAS from reasserting that lien or otherwise recovering the cost of care, Plaintiff's claim is moot with no reasonable expectation that the alleged violation will recur. It would serve no useful purpose nor afford Plaintiff any relief to preclude that which the legislature has already precluded. All claims against Commissioner Gilman, sued only in her official capacity, are DISMISSED as moot.[6]

*Claims Against Former Commissioner Geballe for Money Damages – 12(b)(6)*

Defendants present several arguments in support of their request to dismiss the Second Amended Complaint for failure to state a claim. First, Plaintiff's purported debt does not derive from any federal statute. Second, the § 1983 claims fail because there are no facts alleging violations of federal rights or statutes by Geballe. Third, Plaintiff's deprivation of Due Process claims are devoid of facts. Last, Plaintiff has failed to state a plausible Takings Clause claim. The Court addresses each argument in turn.

**Section 1983**

"Section 1983 gives a cause of action to any person who has been deprived of his constitutional rights, privileges or immunities under color of state law." *Powell v. Workmen's Comp. Bd. of State of N. Y.*, 327 F.2d 131, 135 (2d Cir. 1964). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights

---

[6] To the extent Plaintiff seeks a declaratory judgment that the Commissioner violated Plaintiff's rights under federal law or the Constitution in the past, such relief is barred by the Eleventh Amendment. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993) (Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past."); *Green v. Mansour*, 474 U.S. 64, 68, (1985) (same).

elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1979) (citing *Baker v. McCollan*, 443 U.S. 137, 144 & n.3 (1979)). "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived him of a federal right." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

*Claims Pursuant to the Affordable Care Act or Medicaid*

The alleged debt—accepting as true that it is a debt and not simply a record of the cost of care the State rendered to Plaintiff—cannot have, as a matter of law, been created pursuant to Medicaid or the ACA. It is therefore axiomatic that the debt cannot have been created in violation of either federal statutory scheme. Medical assistance as defined by Medicaid includes payments for cost of care for people who "are eligible for medical assistance." 42 U.S.C. § 1396d(a). Medicaid further defines and provides categories of individuals who are eligible for medical assistance under Medicaid. *See* 42 U.S.C. §§ 1396d(a)(i)–(xvii); *see also Waterbury Hosp. Center v. Sebelius*, No. 3:09-cv-1701 (RNC), 2012 WL 4512506, at *3 (D. Conn. Sept. 29, 2012) (Under § 1396d(a), "'medical assistance' means payment of all or part of the cost of certain services to individuals eligible for Medicaid" and holding that because these particular participants "are ineligible for Medicaid, they are excluded by [the pertinent] definition."). Medicaid provides that medical assistance *does not* include "payments with respect to care or services for any individual who has not attained 65 years of age and who is a patient in an institution for mental diseases," also known as the IMD exclusion. 42 U.S.C. § 1396d(i)(B). "In other words, the statute prohibits the federal government from reimbursing any treatment in mental-health facilities (at least for beneficiaries between 21 and 64)." *Stewart v. Azar*, 313 F. Supp. 3d 237, 247 (D.D.C. 2018); *see also Northeast Hosp. Corp. v. Sebelius*, 699 F. Supp. 2d 81, 88 (D.D.C. 2010) (because the patients at issue "do not come within one of those thirteen

8

categories of people eligible for Medicaid . . . they cannot receive 'medical assistance' as that phrase is defined in the Medicaid statute.").

While Plaintiff is correct that the ACA allowed states to expand Medicaid coverage, the ACA did not amend or otherwise repeal the IMD exclusion in § 1396d. Indeed, in 2015, the Health and Human Services Secretary began allowing states to apply for a § 1115 waiver that would allow states to be reimbursed for costs related to substance abuse programs. *See Stewart*, 313 F. Supp. 3d at 247–48. Connecticut did not receive a § 1115 waiver for substance abuse programs until 2022, eleven years after the State provided care to Plaintiff. *See Connecticut Substance Use Disorder Demonstration*, Medicaid, https://www.medicaid.gov/medicaid/section-1115-demo/demonstration-and-waiver-list/110976 (last visited Mar. 11, 2024); *Section 1115 Demonstration Waiver for Substance Use Disorder (SUD) Treatment*, Connecticut, https://portal.ct.gov/DSS/Health-And-Home-Care/Substance-Use-Disorder-Demonstration-Project (last visited Mar. 11, 2024).

Indeed, prior to the § 1115 waiver, these mental health facilities could not "receive federal funding" for any treatment because of the IMD exclusion in § 1396d(i)(B). *Stewart*, 313 F. Supp. 3d at 247; *see also Brown v. District of Columbia*, No. 14-cv-750 (RC), 2022 WL 103304, at *2 (D.D.C. Jan. 11, 2022) ("Under the IMD exclusion, . . . funds paid by the federal government to states for Medicaid expenditures—is generally unavailable for 'payments with respect to care or services for any individual who has not attained 65 years of age and who is a patient in an institution for mental diseases.'").

Accordingly, Plaintiff's alleged debt, generated in 2011 when he was older than 21 and younger than 65 for substance abuse and mental health treatment that occurred at an IMD, and prior to Connecticut receiving a § 1115 waiver, could not have been created pursuant to

9

Medicaid or the expenditure of federal funds. *See also Northeast Hosp. Corp. v. Sebelius*, 699 F. Supp. 2d 81, 88 (D.D.C. 2010) ("It is undisputed that the charity care patients do not come within one of those thirteen categories of people eligible for Medicaid. . . . Therefore, they cannot receive 'medical assistance' as that phrase is defined in the Medicaid statute."). "It is Congress's unambiguous definition of 'medical assistance,' not any purported inconsistent behavior by the Secretary or the [state], that controls." *Id.* at 90.

Accordingly, any § 1983 claim against Geballe predicated on the creation of the "debt" as a violation of Medicaid or the ACA fails to state a claim for which relief can be granted.

*Due Process & Takings Clause Claims*

Procedural "Due [P]rocess requires only that the state afford a party threatened with a deprivation of property a process involving pre-deprivation notice and access to a tribunal in which the merits of the deprivation may be fairly challenged." *Chase Group Alliance LLC v. City of New York Finance Department*, 620 F.3d 146, 151–52 (2d Cir. 2010). "If such a process is in place, due process is satisfied." *Id.* at 152; *see also Smith v. United States*, No. 3:11-cv-1996 (VLB), 2014 WL 902589, at *6 (D. Conn. Mar. 7, 2014) (explaining that prior precedent makes clear that Due Process rights are protected as long as plaintiff "was able to challenge the validity of the lien"). Here, Plaintiff received notice of the lien, had access to the tribunal in which the deprivation was challenged (the Probate Court), did so challenge (in the Probate Court and before this Court), and, ultimately, the lien was removed. As such, it cannot be said that Geballe violated Plaintiff's procedural Due Process rights when the lien was originally placed in the Probate Court.

To plead a plausible substantive Due Process claim, a plaintiff must allege facts establishing (1) a cognizable property interest (2) that was invaded (3) in an arbitrary and

irrational manner. *TZ Manor, LLC v. Daines*, 503 Fed. Appx. 82, 84 (2d Cir. 2012) (summary order); *O'Mara v. Town of Wappinger*, 485 F.3d 693, 700 (2d Cir. 2007); *see also O'Connor v. Pierson*, 426 F3d 186, 200 n.6 (2d Cir. 2005) (noting that substantive Due Process "is the right to be free of arbitrary government action that infringes a protected right"). Importantly, substantive standards of the Due Process Clause require "conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258, 259 (2d Cir. 1999). Conduct that is "merely incorrect or ill-advised" is insufficient to give rise to a substantive due process violation. *Ferran v. Town of Nassau*, 471 F.3d 363, 369–70 (2d Cir. 2006) (citation omitted; internal quotation marks omitted).

Plaintiff does allege a sufficient property interest: his interest as a beneficiary of his grandmother's estate. *See Watrous v. Town of Preston*, 902 F. Supp. 2d 243, 259 (D. Conn. 2012) (explaining that "due process rights attach to even temporary or partial impairments of those [property] interests" including liens) (citing *Connecticut v. Doehr*, 501 U.S. 1, 11 (1991)). And placing a lien on that property interest would satisfy the "invasion" prong of a substantive Due Process claim. *Id.*

But Plaintiff's allegations as to nature of the arbitrary intrusion include only that he was forced into litigation to maintain his property rights in his deceased grandmother's estate and to "resurrect a past painful difficult health condition." SAC at 25 ¶ 74. Plaintiff inexplicably argues that Geballe is not in compliance with federal law and has "continued to maintain his illegal state enforcement of an illegal state debt." However, as noted, there is no longer any state enforcement of the lien (by Geballe or anyone), and likewise, there is no illegal state debt in violation of federal law because Plaintiff could not have been treated using Medicaid funds. Plaintiff has not

11

therefore plausibly alleged that Geballe's conduct was "so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale*, 170 F.3d at 259.

Any Takings Clause claim likewise fails, because a statutory lien is not a taking as a matter of law, and even if it was, the state never took any funds. *See Tchakarski v. United States*, 69 Fed. Cl. 218, 221–222 (2005) ("Although the court has jurisdiction over claims alleging a unconstitutional taking of private property, it does not have jurisdiction over the "takings claim" in this case, because, as a matter of law, a notice of a tax lien is not a taking."); *First Atlas Funding Corp. v. United States*, 23 Cl. Ct. 137, 139 (1991) (holding that a lien is merely a means of securing a position as a creditor and, therefore, the filing of a notice of a tax lien against a property interest does not state a takings claim). Accordingly, Plaintiff's procedural Due Process, substantive Due Process, and Takings Clause claims all fail for failure to state a claim as a matter of law.

Accepting as true Plaintiff's allegations, Plaintiff has failed to plausibly allege that Geballe, acting under color of state law, violated any federal law or infringed rights afforded to Plaintiff under the United States Constitution.

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED with prejudice. (ECF No. 78) Plaintiff's motion to join is MOOT. (ECF No. 84) The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of March 2024.

　/s/ Kari A. Dooley　
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE